UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT CURRIE,

    Petitioner,

v.

THOMAS WINN,

    Respondent.

Case No. 17-12441
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS [1]**

Scott Currie lured police to his Michigan home on the night of July 13, 2013, by reporting a crime. When the police arrived, two shots were fired at one of the officers. They missed. Currie then barricaded himself in the home for about two hours. At Currie's trial, an Oakland County Circuit Court jury saw dashcam video, listened to the 9-1-1 call, heard from Currie, his girlfriend, the officers about the events of that night, and a firearm expert about shots being fired from guns found in Currie's home. So informed, the jury convicted Currie of assault with intent to commit murder, assaulting, resisting or obstructing a police officer, two counts of felony-firearm, and possession of a firearm while intoxicated.

On direct appeal, Currie challenged his trial counsel's defense strategy and claimed he received ineffective assistance of counsel. He also challenged the weight of the evidence. The Michigan Court of Appeals rejected the claims and affirmed the convictions. Currie now challenges his conviction in a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Having reviewed the petition, the warden's response, and the state-court record, this Court

finds that the Michigan Court of Appeals reasonably concluded that Currie's claims were without merit. The Court will thus deny the petition.

**I.**

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals:

> This case arises from an incident involving shots fired in a residential area after officers were dispatched to the location upon a phone call from defendant, who claimed that he had committed a crime. Clawson Police Department Officers Adam Nemer–Kaiser and Robert Schreiber were the first to respond, in separate vehicles, about five minutes after defendant reached the 9–1–1 dispatcher. Nemer–Kaiser, who arrived seconds before Schreiber, exited his vehicle and walked toward [Currie's] house. He testified that as he approached, he saw [Currie] look out the front window at him, exit his front door onto his porch, aim a "large, black" handgun directly at Nemer–Kaiser's chest, and fire a shot. Schreiber had parked his department vehicle in such a way that his dashboard camera recorded part of Nemer–Kaiser's vehicle on one side and part of the front of defendant's house on the opposite side. The jury viewed the dashboard camera recording at trial and during deliberations. The recording is the focal point of this appeal.

*People v. Currie*, No. 322785, 2016 WL 4044669, at *1 (Mich. Ct. App. July 26, 2016).

The recording was the focal point of the appeal because, at trial, both officers testified that they clearly saw a muzzle flash on the porch when Currie fired the first shot. (*Id*. at *2.) But the video did not depict a discernible muzzle flash during the time Currie apparently fired his handgun, or a person standing on his porch at any point. (*Id.*) Still, said the Court of Appeals,

> much of the testimony and other physical evidence presented at defendant's trial supported Nemer-Kaiser's version of the incident. Nemer-Kaiser testified that he parked down the street from defendant's house about five minutes after defendant reported a rape at 9:50 p.m., and started walking in the direction of defendant's house. He had made it about 30 feet when he saw defendant step outside and fire a handgun in his direction. This testimony is consistent with the Schreiber dashboard recording, which demonstrated that it took about five seconds for Nemer-Kaiser to make it across the intersection. The 9-1-1 transcript clearly reflected a shot fired at 9:55 p.m., and immediately thereafter, defendant's live-in girlfriend, Vivian White, telling the 9-1-1 dispatcher that defendant fired a shot from the front porch. Schreiber, who arrived seconds after Nemer-Kaiser, testified that he clearly saw a muzzle flash on defendant's porch and heard the "big boom" of a gunshot. And the

> soundtrack of the otherwise useless dashboard camera recording from Nemer-Kaiser's car caught the first gunshot fired just after Nemer-Kaiser exited his vehicle. Nemer-Kaiser also testified that he turned on his flashlight and ran for cover immediately after hearing the first shot. Although no discernible muzzle flash is seen in the Schreiber recording and no gunshot can be heard, Nemer-Kaiser can clearly be seen turning on his flashlight as he moves toward the neighbor's vehicles at exactly the same time the 9-1-1 transcript confirms the first shot was fired.

*Id.*

In closing arguments, Currie's counsel "asked the jurors to focus on the video, and to remember what the video did not show." (*Id.* at *5.) But rather than focus on the issues with the video, the defense theme at trial was that Currie did not have the requisite intent to kill the officers.

The jury had a different view and convicted Currie on all charges. The trial court sentenced him to 10 1/2 to 40 years' imprisonment for the assault with intent to murder charge, one to two years imprisonment for assaulting, resisting, or obstructing a police officer, two years' imprisonment for each felony-firearm conviction, and a 93-day term for the possession of a firearm while intoxicated charge.

Following a *Ginther* hearing, the trial court found that defense counsel's assistance had not been ineffective and denied Currie's motion for new trial.

On appeal, Currie again claimed ineffective assistance of counsel and that the conviction for assault with intent to murder was against the great weight of the evidence. The Michigan Court of Appeals disagreed and affirmed the convictions. *People v. Currie*, No. 322785, 2016 WL 4044669, at *1 (Mich. Ct. App. July 26, 2016).

Currie did not file an application for leave to appeal to the Michigan Supreme Court. (ECF No. 1, PageID.2; ECF No. 9-14, PageID.1.) Nor did he raise any post-conviction challenges in state court. Instead, he filed a petition in this court seeking a writ of habeas corpus on the following

two grounds: ineffective assistance of counsel and guilty verdict is against the great weight of the evidence. (ECF No. 1.)

**II.**

The Antiterrorism and Effective Death Penalty Act (AEDPA)—28 U.S.C. § 2254 in particular—"confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Thus, if a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

Here, the Michigan Court of Appeals decided both of Currie's habeas claims on the merits and so the Court will apply AEDPA deference.

**III.**

**A.**

The Court pauses to explain why it is addressing the merits of claims that Currie did not attempt to present to the Michigan Supreme Court.

The doctrine of exhaustion of state remedies requires state prisoners to present all their claims to the state courts before raising their claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This requirement is

satisfied if a prisoner "invok[es] one complete round of the State's established appellate review process," including a petition for discretionary review in the state supreme court, "when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan*, 526 U.S. at 845, 847. Thus, to be properly exhausted, each habeas claim must have been fairly presented to the state court of appeals and to the state supreme court. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). And, depending on certain circumstances, federal district courts may dismiss a habeas petition containing any unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 510, 522 (1982); *Rhines v. Weber*, 544 U.S. 269, 273–75 (2005).

The warden's response identifies this exhaustion issue in a footnote, but urges the Court to decide the claims on the merits. (ECF No. 8, PageID.53.) The warden also advises that it is not raising the defense of procedural default. (*Id.*, PageID.32.)

The Michigan Court of Appels issued its opinion on July 26, 2016. Currie filed his habeas petition exactly one year later, on July 26, 2017. (ECF No.1.) Given the statute of limitations concerns from an outright dismissal of the petition, the lack of any significant comity issues (because it is unlikely the state courts would consider Currie's claims in the present procedural posture), the warden's invitation to consider the merits, the lack of merit of the claims, and that Currie's failure to exhaust does not deprive the court of jurisdiction, *see Granberry v. Greer*, 481 U.S. 129, 131 (1987), the Court will address the merits of Currie's claims.[1]

**B.**

The Court begins with Currie's claim that his counsel provided ineffective assistance at trial.

---

[1] Likewise, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

5

"An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687(1984)).

To succeed on the performance prong, Currie must identify acts that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The reviewing court must "indulge a strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 689–90.

To satisfy the prejudice prong, Currie must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id*.

As raised in the state courts and now reasserted in his habeas petition, the essence of Currie's ineffective-assistance claim appears to be that defense counsel failed to properly explain the details of Schreiber's dashboard recording and failed to highlight perceived inconsistencies with Nemer-Kaiser's testimony. More specifically, Currie faults his trial counsel for failing to cross-examine witnesses or argue to the jurors that the dashboard camera video from Schreiber's police cruiser did not show a muzzle flash of a gun being fired from the front porch of his house. Currie claims that the absence of a muzzle flash in the video could have been used to impeach Nemer-Kaiser's testimony that Currie stepped out on the front porch, raised his handgun, and fired it at Nemer-Kaiser's chest. And this, in turn, could have been used to negate the specific intent to kill required to sustain his conviction for assault with intent to commit murder.

Currie's trial counsel testified at a *Ginther* hearing and explained the reasoning behind her trial strategy. As summarized by the Michigan Court of Appeals,

6

> At the hearing, defense counsel took the stand and explained that during the four months before trial, she had reviewed the dashboard camera video from Schreiber's vehicle more than 15 times, and although she had not been able to acquire the proper equipment to show it to defendant in jail, she had taken detailed notes about the video and went over those with defendant. Defense counsel explained that she had not seen a muzzle flash in Schreiber's video, any light emanating from defendant's porch during the incident, or any person standing on defendant's porch. However, she felt that she was unable to argue that defendant had not fired a gun, as gunshots were clearly heard on the 9–1–1 recording and the recording from Nemer–Kaiser's dashboard camera. Further, counsel thought that it would harm her case to argue that defendant did not fire from the porch because [Vivian] White, her own witness, had stated that defendant shot from the front porch, both officers testified that they saw a muzzle flash from defendant's porch, and defendant himself had admitted, in a statement not admitted at trial, that he had been standing on the porch when he fired his gun in the air. Defense counsel felt that her only real option was to argue that defendant had not had the intent to kill Nemer–Kaiser, and she believed that the video did not offer support for that theory. Defense counsel claimed that she had discussed her strategy with defendant, and he had approved.

*Currie*, 2016 WL 4044669, *4. In analyzing Currie's claim for ineffective assistance of counsel, the Michigan Court of Appeals considered this testimony.

> The Michigan Court of Appeals further reasoned:
>
> Defense counsel explained at the Ginther hearing that she believed her only viable defense was that defendant lacked the intent to kill Nemer–Kaiser. She chose to focus on the lack of intent through vigorous cross-examination of Nemer–Kaiser, highlighting the fact that his version of events might be tainted by his lack of experience and the fact that it was too dark outside to see.
>
> This strategy was objectively reasonable. As previously discussed, the fact that defendant fired a weapon was beyond dispute. Further, defense counsel knew that arguing defendant's position as he fired the first shot, while having the potential to undermine Nemer–Kaiser's version of events, would not help her case and in some ways could prove detrimental. Her own witness testified that defendant was on the front porch when he fired his first shot. And as previously discussed, defendant's precise location at the time he shot at Nemer–Kaiser was irrelevant to the matter of intent.
>
> In closing arguments, defense counsel asked the jurors to focus on the video, and to remember what the video did not show. She presented a defense—that defendant had not seen the officers before he fired his shots in the air—which defendant had discussed with defense counsel and approved.

*Id*. (paragraphing altered).

As the foregoing makes plain, the Michigan Court of Appeals decided Currie's ineffective-assistance claim "on the merits" as that term is used in 28 U.S.C. § 2254(d). That means that this Court does not ask whether Currie's counsel's strategy was reasonable, but whether the Michigan Court of Appeals reasonably decided the strategy was reasonable. *See Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (providing that, when it applies, § 2254(d) "require[s] that [a] federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt.").

The Michigan Court of Appeals did not unreasonably apply *Strickland*. Currie's counsel's decision to forgo a "I'm not the shooter" defense for a "I did not shoot with intent to kill" defense is the essence of a "strategic choice" that *Strickland* says is "virtually unchallengeable." 466 U.S. at 690–91. As found by the state court, given counsel's assessment of the evidence, her decision to focus on arguing that Currie lacked the intent to kill, in hopes of avoiding an assault with intent to commit murder conviction, rather than to spend time focusing on the lack of a visible muzzle flash in the dashboard camera video, was reasonable. And because Currie's theory at trial was that he shot the firearm but did not intend to kill anyone, the state court reasonably concluded that counsel was not ineffective in failing to present evidence that Currie did not discharge a firearm from the front porch. *See, e.g., Workman v. Bell*, 178 F. 3d 759, 769 (6th Cir. 1998) (trial counsel did not provide ineffective assistance by failing to discover evidence purporting to show that police officer's wounds were not caused by defendant's ammunition; defendant's theory at trial was that he was attempting to surrender when he accidentally shot officer). Currie "offers only speculation and tendentious inferences to suggest any potential value for the defense from the police-cruiser video." *See Williams v. Bauman*, No. 16-2374, 2017 WL 4546637, at *3 (6th Cir. May 1, 2017). That Currie may have preferred his lawyer to put forth a different defense theory does not render

8

counsel's performance deficient nor does it make the Court of Appeals' assessment of counsel's performance unreasonable.

The Michigan Court of Appeals also found that, even if defense counsel's decisions regarding how to address the Schreiber recording were shown to be objectively unreasonable, Currie's ineffective assistance of counsel claim still failed because he did not show that the decisions resulted in prejudice. *Currie*, 2016 WL 4044669, *5. The court of appeals pointed out that the jury reviewed the entire dashboard camera video at trial and during deliberations and that the jury was given sufficient evidence to understand what the video showed and did not show— they did not need further explanation from defense counsel. *Id*. at *6. The court ultimately concluded:

> There is no indication that further explanation from defense counsel was necessary or that it would have made any difference in the outcome of defendant's trial. Despite defendant's argument on appeal, the jury was well aware of the testimony presented in this case and the details presented in the recording. These details neither support nor refute defendant's intent to kill, which defendant admits was the only real issue in this case. Indeed, after multiple viewings, the trial court concluded that the video was not powerful or exculpatory, that it could easily be interpreted to support the prosecutor's theory, and that it did not undermine Nemer–Kaiser's testimony in any significant way. After additional viewings, we are not convinced that the trial court made a mistake when it so found. The evidence was sufficient to support an inference of intent to kill without any reference to the recording, and without suffering prejudice, defendant cannot establish a deprivation of the effective assistance of counsel.

*Id*. at *4–6. Currie has made no showing that this finding was an unreasonable application of *Strickland*'s reasonable-probability test.

Failing to show that the Michigan Court of Appeals' unreasonably applied either prong of the *Strickland* test, Currie is not entitled to habeas relief on his claim for ineffective assistance of counsel.

## C.

Currie also claims that the verdict went against the great weight of the evidence because the dashboard camera video from Officer Schreiber's vehicle contradicts the testimony from Officers Nemer-Kaiser and Officer Schreiber that Currie discharged his weapon from the front porch.

This argument is a state-law claim that is not reviewable by a federal court in a habeas proceeding. *See Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007); *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004) ("A federal habeas court . . . has no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence. Such a claim is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised." (citations omitted)). More specifically, under Michigan law, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642 (1998) (internal quotation omitted). "This is distinct from the due process issues raised by insufficient evidence and 'does not implicate issues of a constitutional magnitude.'" *Id*. at 634 n. 8. Thus, a claim that a verdict is against the great weight of the evidence alleges an error of state law, which is not cognizable on habeas review." *Kukla v. Warren*, 12-14007, 2015 U.S. Dist. LEXIS 46304, *16-17 (E.D. Mich. Apr. 9, 2015) (citation omitted).

But because Currie is *pro se*, the Court interprets the argument to be that the state court erroneously found his conviction to be supported by sufficient evidence, which is a federal due process claim. *Nash*, 258 F. App'x at 764 n.4.

To assess a sufficiency of evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The *Jackson v. Virginia* standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id*. (quoting *Jackson*, 443 U.S. at 319). What is more, the standard "is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In the state court, Currie challenged only the intent element of the charge of assault with intent to murder, "arguing that, in light of conflicts between witness testimony and video evidence, the jury could not have found that defendant possessed an actual intent to kill Nemer–Kaiser when he fired a gun from his porch." *Currie*, 2016 WL 4044669, at *2. The Court of Appeals disagreed. It was "unable to find anything in the video to directly contradict Nemer–Kaiser's version of the incident." *Id*. Indeed, it concluded:

> Nemer–Kaiser's testimony alone was enough to support a finding of intent to kill . . . . Defendant called 9–1–1 in order to report a purported crime that had not been committed, and he was well aware that the police would be arriving shortly to his home. He told the 9–1–1 dispatcher that he was "locked and loaded" and had two firearms in hand as he waited for the police to arrive. From this undisputed evidence, the jurors could have drawn the reasonable inference that defendant intended to lure police officers to his home and engage them in a firefight. There was no evidence presented at trial to suggest that defendant could not see Nemer–Kaiser when he fired the first shot. Indeed, Nemer–Kaiser testified that defendant aimed his handgun directly at Nemer–Kaiser's chest, one of the most vulnerable parts of the officer's body. The fact that defendant used a gun, an instrument "naturally adapted to produce death," supports an inference that defendant acted with an actual intent to kill Nemer–Kaiser.

*Id*. at *3.

The Court has been given no reason to find that the evidence was insufficient to sustain Currie's conviction. Currie's "insufficient evidence argument rests on an allegation involving witness credibility, which is clearly the province of the jury and not this court." *Tyler v. Mitchell*, 416 F. 3d 500, 505 (6th Cir. 2005); *see also Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (noting that attacks on witness credibility constitute a challenge to the quality, but not the sufficiency, of the prosecution's evidence).

Habeas relief is not warranted on the challenge to the weight or sufficiency of the evidence.

**IV.**

For the reasons given, Currie's petition for a writ of habeas corpus is DENIED. And because the Court believes that no reasonable jurist would argue that Currie should be granted habeas corpus relief on his claims, the Court DENIES him a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if Currie chooses to appeal the Court's decision, he may proceed in forma pauperis because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

    s/Laurie J. Michelson
    LAURIE J. MICHELSON
    UNITED STATES DISTRICT JUDGE

Date: March 12, 2019

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 12, 2019.

    s/William Barkholz
    Case Manager to
    Honorable Laurie J. Michelson